UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| SAINT LOUIS UNIVERSITY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:12CV01128 ERW |
| MEDTRONIC NAVIGATION, INC., *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants Medtronic Navigation, Inc. and Medtronic Sofamor Danek, Inc.'s Motion to Dismiss the complaint, Motion to Dismiss Defendant Medtronic Sofamor Danek, Inc., or in the alternative, to Transfer Venue [ECF No. 6].

**I.   BACKGROUND AND PROCEDURAL HISTORY**

In March 1994, Plaintiff Saint Louis University ("Plaintiff") and Defendants Medtronic Navigation, Inc. ("Medtronic") and Medtronic Sofamor Danek, Inc. ("Sofamor Danek") (collectively, "Defendants") entered into a License Agreement, whereby Medtronic agreed to pay Plaintiff royalties on the sales of products licensed to Medtronic by Plaintiff [ECF No. 1 at *2].[1] Medtronic is a Delaware corporation with its principal place of business in Colorado; it "manufactures, markets, sells and sublicenses products . . . for use in surgical procedures." [ECF No. 1 at *2]. Sofamor Danek is an Indiana corporation with its principal place of business in Tennessee.

---

[1]At the time the License Agreement was executed, Medtronic was doing business as Stealth Technologies, Inc. ("Stealth"). Stealth became Surgical Navigation Technologies, Inc. ("SNT") in March 1995, and was subsequently acquired by Sofamor Danek Group, Inc. ("SDG"). SDG was then acquired by Medtronic, becoming Sofamor Danek. SNT became Medtronic in January 2005 [ECF No. 1 at *2-4].

Sales of Plaintiff's licensed products commenced in June 1995, with royalty payments beginning in October 1995 [ECF No. 1 at *4]. Pursuant to the License Agreement, in January 2007. Plaintiff engaged an accounting firm to audit the royalty payments by Medtronic, resulting in a conflict over how Medtronic was calculating the royalty payments.

In August 2010, Plaintiff and Medtronic began discussing the appropriate measure of past royalties paid; the parties entered into a Tolling Agreement in January 2011 "[p]ursuant to subsequent settlement negotiations" [ECF No. 1 at *6]. The Tolling Agreement was amended twice, and was set to expire on June 30, 2012.

Notwithstanding the Tolling Agreement, Plaintiff filed suit with this Court on June 22, 2012 against Medtronic and Sofamor Danek, eight days before expiration of the agreement, alleging breach of contract for failure to pay royalties and failure to provide copies of sublicense agreements obtained by Medtronic; Plaintiff also sought declaratory judgment on its claims [ECF No. 1]. Defendants filed a Motion to Dismiss, or in the alternative, to Transfer Venue on July 13, 2012, arguing that the covenant not to sue contained in the Tolling Agreement bars the suit; that Sofamor Danek is not a party to the license agreement and should be dismissed, and alternatively that this Court should transfer to the District of Colorado.[2] Plaintiff filed its response July 23, 2012, arguing that enforcement of the covenant not to sue does not warrant dismissal of the suit, that Sofamor Danek ought not be dismissed from the suit, and that venue is appropriate in this Court [ECF No. 10]. Defendants filed their reply August 2, 2012 [ECF No. 13].

---

[2]On June 30, 2012, the day the Tolling Agreement expired, Defendants filed their own lawsuit in the United States District Court of Colorado. *Medtronic Navigation, Inc. v. Saint Louis University*, No. 1:12CV01706 PAB-MJW (D. Col. June 30, 2012). That litigation is currently pending.

## II. DISCUSSION

### A. DEFENDANTS MOTION TO DISMISS BASED UPON THE COVENANT NOT TO SUE

Defendants ask this Court to dismiss Plaintiff's complaint because it was filed eight days prior to expiration of the covenant not to sue [ECF No. 6]. Plaintiff does not dispute that the covenant was breached, but argues that specific performance is not the appropriate remedy and that its breach was immaterial. This Court concludes that under existing Missouri law, the appropriate remedy for breach of a covenant not to sue is damages, and that dismissal does not accord with the rationale behind such covenants.

Missouri substantive law governs contract interpretation. *Kelly v. Golden*, 352 F.3d 344, 846 (8th Cir. 2003). A federal court sitting in diversity is bound by the decisions of the forum state's highest court. *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006). Regarding covenants not to sue, the Missouri Supreme Court has ruled that such covenants do not present a bar to an action on the claim, "the only remedy of the covenantee being a suit for damages on the covenant or agreement." *Hosea v. Rowley*, 57 Mo. 357 (1874) (quoting *Rucker v. Robinson*, 38 Mo. 158 (1866)). Because these cases appear to be Missouri's most recent discussion of covenants not to sue, this Court will indulge in a more detailed analysis of the appropriate remedy for breach of a covenant not to sue.

As an initial matter, it is important to distinguish a temporary covenant not to sue (a short-term agreement not to sue another party) from a permanent covenant not to sue (a release of one party from liability to the other). One is a contractual promise not to sue, while the other is a discharge of liability. *See* 12 Richard A. Lord, *Williston on Contracts* § 36:16, at 677-78 (4th ed.). The distinction is most important when analyzing damages, due to the risk of circuity: "[A] covenant not to sue [at all] . . . is a bar to the original cause of action. This is to avoid circuity of

action; for if the plaintiff in the original action were to recover, the defendant could recover precisely the same damages back for breach of the covenant to forbear or not to sue." *Id.* "The circuity of action that occurs when there is a covenant to perpetually forbear from bringing suit does not occur" where the parties agree not to sue for a limited time. *Kunza v. St. Mary's Regional Health Center*, 747 N.W.2d 586, 593 (Minn. Ct. App. 2008); *see also 3M Co. v. Ivoclar Vivadent AG*, 2012 WL 1438989 at *2 (D. Minn. 2012) (applying *Kunza*). This Court finds the rationale of these Minnesota cases persuasive: In analyzing a breach of a temporary covenant not to sue, "a breach occurs when an action is brought early, not when any action is brought, and it is not necessarily the case that the damages to respondents caused by bringing the action early are precisely the same damages that appellant could recover in her underlying action." 747 N.W.2d at 593. In other words, while circuity is a convincing rationale for dismissing a suit brought in breach of a permanent covenant not to sue, that same rationale does not exist when the breach is of a temporary covenant not to sue. This result also accords with the well-established rule that equitable remedies will only be granted where there exists no adequate remedy at law. *See, e.g.*, *Oliver v. Johnson*, 238 Mo. 359 (Mo. 1911).

This Court notes that the Restatement of Contracts § 285 conflicts with this result: "[A] contract not to sue for a limited time bars an action to enforce the duty during that time." However, Missouri has not adopted Rest. § 285. Nor has Missouri expressed an intent to adopt all or substantially all of the Restatement of Contracts. As Plaintiff points out, Missouri courts have frequently declined to adopt the Restatement's position, and have elected in cases to adopt contrary positions. *See, e.g., State ex rel. PaineWebber, Inc. v. Voorhees*, 891 S.W.2d 126 (Mo. 1995); *State v. Maryville Land P'ship*, 62 S.W.3d 485 (Mo. Ct. App. 2001); *Jake C. Byers, Inc.*

4

*v. JBC Investments*, 834 S.W.2d 806 (Mo. Ct. App. 1992). Again, this Court finds persuasive *Kunza*'s analysis of the Restatement's position:

> We see some merit in [Rest. § 285's] straightforward principle that a party who contracts not to sue for a limited time is barred from bringing an action during that time. But because appellant only agreed to temporarily refrain from bringing her cause of action and did not give up her claims against respondents, we are not persuaded that her contract not to sue for a limited time period should be given the effect of a release and serve as a bar to appellant's action. Instead, respondents may pursue their available remedies to enforce their rights under the contract.

*Kunza*, 747 N.W.2d at 593.

Defendants cite two cases that have elected to adopt Rest. § 285's approach barring suits brought in violation of a covenant not to sue. *Shay v. First Fed. of Miami, Inc.*, 429 So.2d 64 (1983); *New York State Energy Research and Dev. Auth. v. Nuclear Fuel Servs., Inc.*, 561 F. Supp. 954, 965-66 (W.D.N.Y. 1983). Defendants suggest that Missouri would likely adopt the position laid out in the Restatement and these two cases, as opposed to the position of Williston and the recent Minnesota cases. This Court disagrees. There is no indication that Missouri intends to depart from its precedent. Moreover, this Court finds Defendant's logic attacking the Missouri cases to be dubious.

Defendant suggests that the Minnesota court's decisions, and by implication this Court's decision, "have regressed back to the out-dated logic of the 1800's [ECF No. 7 at *7]. This outdated logic, Defendant asserts, is that the only rationale for not barring a suit brought in violation of a covenant not to sue is that courts "mistakenly assumed that a dismissal would preclude a plaintiff from raising the same claims after the covenant not to sue expired." [ECF No. 13 at *3]. However, as demonstrated, there are valid contemporary rationales for not requiring dismissal. Regardless of whether dismissal would have resulted in preclusion, equitable remedies

5

are generally disfavored in contract law, and where the breach is of a temporary covenant not to sue, there is no reason damages would not adequately compensate the aggrieved party.

Moreover, contrary to Defendant's assertion, this Court is not convinced that to hold otherwise would "deter parties from engaging in pre-litigation settlement negotiations and punish those who attempt to settle their disputes outside of court," or that it would "stymie the very discussions they are intended to promote and induce a race to the courthouse" [ECF No. 7 at *8]. Parties routinely engage in settlement negotiations without the benefit of temporary covenants not to sue. Moreover, these covenants are valid and enforceable, and damages are available against a party who breaches them. Lastly, whether dismissal is appropriate against a party who breaches a covenant not to sue does not resolve the venue discussion in favor of the violating party. Defendants should be aware of this, as the case they cite in support of the above conclusions, *Eveready Battery Co. v. Zinc Products Co.*, 21 F. Supp.2d 1060 (E.D. Mo. 1998), resulted in transfer of venue, not dismissal.

Because the Missouri Supreme Court's last ruling on covenants not to sue concluded that damages, and not specific performance, was the appropriate remedy for a violation of that covenant, and because this Court finds no reason that Missouri would divert from that holding, this Court concludes that Defendants' Motion to Dismiss should be denied.

**B.  DEFENDANTS MOTION TO TRANSFER VENUE**

Defendants ask this Court, in the alternative, to transfer the case to the United States District of Colorado in the interests of convenience and justice [ECF No. 7]. Plaintiffs argue in their response that this Court should retain jurisdiction.

Where concurrent jurisdiction exists, generally the first court in which jurisdiction attaches has priority to hear the case. *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487,

488 (8th Cir. 1990); *Eveready Battery Co.*, 21 F. Supp.2d at 1061. This "first filed" rule preserves judicial resources and helps to avoid conflicting judgments. *G.S. Robins & Co. v. Alexander Chemical Corp.*, 2011 WL 1431324 (E.D. Mo. 2011) However, the first filed rule is not to be applied rigidly; the prevailing rule is that exceptions are made where "compelling circumstances" establish that jurisdiction should be maintained in the second forum. *U.S. Fire. Ins. Co.*, 920 F.2d at 488-89; *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002 (8th Cir. 1993) ("The [first filed] rule . . . yields to the interests of justice, and will not be applied where a court finds 'compelling circumstances' supporting its abrogation"). It is well established in this circuit that "compelling circumstances" includes situations where it would penalize parties for their efforts to settle, where the plaintiff filed its suit during settlement negotiations with the defendant without the defendant's knowledge, or where there was insufficient notice of a change in the first-filing party's position on the dispute. *See U.S. Fire Ins. Co.*, 920 F.2d at 488-89; *Eveready*, 21 F. Supp.2d at 1062; *Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Employees Retirement Sys.*, 915 F. Supp. 131, 144 (W.D. Mo. 1996).

Accepting Plaintiff's assertion that it did not mislead Defendants as to its position during settlement negotiations, the record nonetheless establishes that the parties were operating under a valid Tolling Agreement which had been renewed twice by the parties and was set to expire eight days after Plaintiff filed their suit [ECF No. 1 at *6]. Whether settlement negotiations were ongoing as of June 22, the record establishes that counsel for Defendants was operating under the assumption that the period for settlement discussions had not ended, [Plaintiff's Response in Opposition, Phone Message of counsel Kurt Niederluecke, ECF No. 10 at *3], and that any decision to forego settlement discussions was one-sided and was not communicated to Defendants. The record also establishes that Plaintiff's counsel did not inform Defendant's

7

counsel of their intent to file this suit before it was actually filed [ECF No. 10 at *3 ("[C]ounsel for SLU responded . . . indicating the law suit against Medtronic *had been filed*) (italics added)]. These facts are sufficient to establish "compelling circumstances" in this jurisdiction such that application of the "first filed" rule is not appropriate. To hold otherwise would be to punish Defendants for focusing on settlement negotiation during the period of time agreed to by the parties, which would violate the well-established public policy encouraging out-of-court settlement. *See Eveready*, 21 F. Supp.2d at 1062 (citing *Boatmen's First Nat'l Bank*, 915 F. Supp. at 144). Because this Court concludes that compelling circumstances warrant abrogation of the first filed rule, it is appropriate to consider the general venue factors to determine whether it should retain jurisdiction over this case. As both parties note, this Court considers the factors expressed in 28 U.S.C. § 1404(a) in determining whether venue is appropriate: convenience of the parties, convenience of the witnesses, and the interests of justice.

Convenience to the parties is not a compelling factor in this case. Each potential forum is convenient to one of the parties, and neither appears to be particularly more convenient than the other. In any event, the Court does not believe that the inconvenience of either forum would actually prejudice the ability of the parties to litigate this case. As such, this Court concludes that this factor does not weigh heavily in favor of granting or denying the requested transfer.

Courts in this circuit have indicated that convenience of the witnesses is the most significant factor in considering the propriety of transfer under § 1404(a). *See, e.g.*, *Anheuser-Busch, Inc. v. City Merch.*, 176 F. Supp. 2d 951, 959 (E.D. Mo. 2001). It appears from the record that the majority of identified witnesses currently reside in Colorado. While Plaintiff correctly points out that the majority are party witnesses, that does not abrogate Colorado's convenience in favor of Missouri.

This Court finds that the interests of justice factors do not weigh more favorably in either direction. However, this Court does conclude that Plaintiff's decision to file early, in breach of the covenant not to sue, is a compelling factor operating in favor of transfer. While a plaintiff's choice of forum generally is given great weight in determining interests of justice, to do so under these circumstances would be to reward Plaintiff's breach of the covenant not to sue. This Court is not inclined to reward that decision, and concludes in light of the other factors that transfer is appropriate.

### C. DEFENDANT'S MOTION TO DISMISS SOFAMOR DANEK

Because this Court concludes that venue is improper in this Court, it will deny Defendant's Motion to Dismiss Sofamor Danek, without prejudice, pending transfer.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss or Transfer [ECF No. 6] is **DENIED** in part and **GRANTED** in part. The case is transferred to the United States District Court of Colorado. That part of the motion requesting dismissal of Plaintiff's claims is denied without prejudice pending transfer of the case to the District of Colorado.

**IT IS FURTHER ORDERED** that the Clerk of Court shall transfer this action to the United States District Court of Colorado pursuant to 28 U.S.C. § 1404(a).

Dated this 13th Day of September, 2012.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE